WATERS KRAUS & PAUL
MICHAEL L. ARMITAGE (No. 152740)
LOUISA O. KIRAKOSIAN (No. 271983)
222 N. Sepulveda Blvd.
Suite 1900
El Segundo, California 90245
Tel. 310-414-8146
Fax. 310-414-8156

WATERS & KRAUS, LLP
LOREN JACOBSON *pro hac vice*
3219 McKinney Ave.
Dallas, Texas 75204
Tel. 214-357-6244
Fax. 214-871-2263

Attorneys for Relator Herren

JOSEPH, GREENWALD & LAAKE, P.A.
Brian J Markovitz, *pro hac vice*
Matthew M. Bryant, *pro hac vice*
6404 Ivy Lane, Suite 400
Greenbelt, MD 20770
(301) 220-2200
(301) 220-1214 (facsimile)

## UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, AND THE STATE OF CALIFORNIA ex  rel. COLLEEN HERREN,<br><br>Plaintiffs/Relator,<br><br>v.<br><br>MARSHALL MEDICAL CENTER, *et al.,*<br><br>Defendants. | CASE NO. 2:12-CV-0098 JAM-KJN<br><br>**RELATOR COLLEEN HERREN'S MEMORANDUM OF POINTS AND AUTHORITIES AND RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS BY DEFENDANTS MARSHALL MEDICAL CENTER AND MARSHALL FOUNDATION FOR COMMUNITY HEALTH** |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

      A.    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.    LEGAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   ARGUMENT .................................................................................................. 4

      A.    HERREN SHOULD BE ALLOWED TO TAKE DISCOVERY TO
            UNDERSTAND THE RELATIONSHIP BETWEEN MARSHALL MEDICAL
            CENTER AND MARSHALL FOUNDATION FOR COMMUNITY HEALTH  4

      B.    DEFENDANT IS NOT COVERED UNDER CMS' ENFORCEMENT
            INSTRUCTION ON SUPERVISION REQUIREMENTS FOR OUTPATIENT
            THERAPEUTIC SERVICES BECAUSE DEFENDANT IS NEITHER A
            SMALL NOR RURAL HOSPITAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    MARSHALL WAS REQUIRED TO COMPLY WITH CMS' SUPERVISION
            REQUIREMENTS FOR OUTPATIENT THERAPEUTIC SERVICES . . . . . . . . 6

      D.    RELATOR PROPERLY ALLEGES DOUBLE BILLING OF UNUSED
            PORTIONS OF SINGLE-DOSE VIALS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      E.    RELATOR'S ALLEGATIONS WITH RESPECT TO THE POOLING AND
            BILLING OF UNUSED PORTIONS OF  SINGLE-DOSE VIALS IMPLICATE
            CONDITIONS OF PAYMENT AND THEREFORE STATE A CLAIM  . . . . . . 9

      F.    HERREN ALSO ADEQUATELY STATES A CLAIM FOR WORTHLESS
            SERVICES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

      G.    THE SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES
            MARSHALL'S KNOWLEDGE WITH RESPECT TO THE SDVs . . . . . . . . . . 12

      H.    THE SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT
            MARSHALL HAD THE REQUISITE KNOWLEDGE TO SUBMIT FALSE
            CLAIMS IN CONNECTION WITH PHYSICIAN OFFICE VISITS FOR
            HOSPITAL TRANSFUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.  CONCLUSION ............................................................................................... 15

- ii -

Relator's Opposition to Motion to Dismiss of Defendant Marshall Medical Center, et. al.

# TABLE OF AUTHORITIES

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) .......................................................... 3

*Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) ................................ 4

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009) ........................................................ 3, 9

*Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010) ............................................ 4, 8, 10

*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ..................................... 15

*Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153 (3d Cir. 2014) ................................... 9

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................... 15

*Grand Union Co. v. United States*, 696 F.2d 888 (11th Cir. 1983) ......................................... 13, 15

*Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037 (9th Cir. 2012) .......................................... 3

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) ................................................. 5

*Massung v. Cracker Barrel Old Country Store*, No. 3:13-cv-2664

    2014 WL 1379680 (N.D. Ohio Mar. 25, 2014) .......................................................... 4

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011), 132 S. Ct. 2101 (2012) .................................... 14

*U.S. ex rel. Brown v. Celgene Corp.*, No. CV 10–3165–GHK

    2014 WL 3605896 (C.D. Cal. July 10, 2014) ......................................................... 3, 4, 9, 14

*U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048 (9th Cir. 2001) ........................... 12, 14

*U.S. ex rel. Solis v. Millennium Pharm., Inc.*, No. No. 2:09–cv–03010–MCE–EFB

    2014 WL 1270581 (E.D. Cal. March 26, 2014) ........................................................ 15

*U.S. ex rel. Woodard v. Davita, Inc.*, No. 1:05-CV-227

    2011 U.S. Dist. LEXIS 153430 (E.D. Tex. May 9, 2011) .............................................. 11

*United States v. Aerodex*, 469 F.2d 1003 (5th Cir. 1972) ................................................. 12

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011) ..................................... 14

*United States v. Hangar One, Inc.*, 563 F.2d 1155 (5th Cir. 1977) ....................................... 13, 15

*United States v. Hughes*, 585 F.2d 284 (7th Cir. 1984) ................................................... 15

*United States v. Neifert–White Co.*, 390 U.S. 228 (1968) ................................................ 3

*United States v. Ridglea State Bank*, 357 F.2d 495 (5th Cir. 1966)................................................ 15


**Federal Statutes**

31 U.S.C. § 3729 ................................................................................................................. 3

31 U.S.C. § 3729(a)(1)(A) ................................................................................................... 3

31 U.S.C. § 3729(a)(1)(B) ................................................................................................... 3

31 U.S.C. § 3729(b)(1)(A)(i)-(iii) ....................................................................................... 13

31 U.S.C. § 3729(b)(1)(B) ................................................................................................... 13

42 U.S.C. § 1395y ........................................................................................................... 10, 11


**State Statutes**

Cal. Gov't Code § 12650 ...................................................................................................... 5


**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................... 3, 5, 14

Federal Rule of Civil Procedure 9(b) .................................................................................. 14

Federal Rule of Civil Procedure 56 ...................................................................................... 5


**Regulations**

54 Fed. Reg. 37239-01 ........................................................................................................ 11

## I.    **INTRODUCTION**

Marshall Medical Center ("Marshall") and the Marshall Foundation for Community Health (the "Foundation") have brought a motion to dismiss Colleen Herren's Second Amended Complaint ("SAC").  For the reasons set forth below, Defendants' motion should be denied.

## A.    **FACTS**

Relator Colleen Herren brought this case in January 2012, after being terminated from her job as the Clinical Nursing Director for Specialty Clinics at Marshall Medical Center for complaining about problematic conduct and fraudulent billing by Marshall, El Dorado Hematology & Medical Oncology II, Inc. ("El Dorado") and Drs. Lin Soe and Tsuong Tsai.  She filed the Second Amended Complaint in December 2014.

The SAC alleges that Marshall and the physicians fraudulently billed government payors for chemotherapy, infusion services, and injections that were provided to patients when the physicians were not immediately available to furnish assistance and direction throughout the performance of the procedure, a condition of payment. SAC ¶¶ 23-25.  The SAC alleges that Herren noticed "that physicians often were not only absent from the Center during procedures, but were routinely miles away during chemotherapy sessions, infusion treatments, and certain injections."  SAC ¶ 64.  The SAC provides specific representative examples of instances—with dates, patient-identifying information, and specific facts—when the physicians were not directly available during procedures, and nevertheless billed Medicare and Medi-Cal for them.   SAC ¶¶ 76 (Dr. Tsai "walking out and driving away" and also going to the bank without any other physician being available during chemotherapy); *see also* SAC ¶¶ 104 – 106.  The SAC also demonstrates that Marshall and Drs. Soe and Tsai were aware that this conduct was prohibited by Medicare regulations.  SAC ¶¶ 68, 73-75.  In September 2011, Marshall's compliance officer sent a memorandum to the physicians to let them know that "supervision of outpatient services is an important payment requirement for hospitals.  Medicare believes that this is one way to ensure it is purchasing a minimum level of safe, quality care for its beneficiaries."  SAC ¶ 78.  Indeed, the lack of physician supervision was apparently leading to instances of patient harm.  SAC ¶ 62.

Importantly, this was not a new issue.  The SAC alleges that Drs. Soe and Tsai have been billing government payors for chemotherapy and infusions without being immediately available since 2001, SAC ¶ 55, and that Marshall has had a relationship with Drs. Soe and Tsai and their clinic since 2007, when their previous hematology and oncology clinic was merged into Marshall, and El Dorado II was set up. SAC ¶ 13.

The SAC also alleges that Marshall and the physicians were billing Medicare when the nurses at the Center impermissibly reused portions of drugs from single-dose vials ("SDVs"). Leftover drug in a single-dose vial cannot be reused.  Instead, a provider is allowed to bill the full amount of the vial *once*, and then must discard the rest.  The SAC alleges that "SDVs of drugs were routinely double billed to the Government Healthcare Programs by rounding up the amount used between two patients.  This resulted in the Government Healthcare Programs being billed twice, once for each patient at the full amount of the vial, such that twice the amount of the vial was billed." SAC ¶ 91.  The SAC provides specific representative examples of instances when this occurred, including dates, the name of the drug, and some patient-identifying information.  SAC ¶¶ 108-113. The SAC also alleges that Defendants allowed some of the partially-used drug in SDVs to expire, and then mixed the expired drug with drug from other SDVs, leading Defendants to use, and bill government payors for, adulterated and contaminated drugs.  SAC ¶¶ 93, 114-116.   An audit conducted by Marshall's pharmacy found that "single dose vials [were] saved and reused after initial use."  SAC ¶ 95. The audit found this problem to be "priority critical" because it was a "regulatory mandate."  *Id.*  The audit stated "[t]his practice must cease." *Id.*  The SAC alleges that the practice did not cease.  SAC ¶¶ 96-98.

Finally, the SAC also alleges that Defendants impermissibly billed government payors for physician visits when patients received blood transfusions at the hospital.  SAC ¶¶ 99 – 103.

Marshall has brought a motion to dismiss, alleging that it was exempt from the direct supervision requirement and that Herren has not adequately alleged any impermissible double-billing or reuse of SDVs.  Marshall also argues that it lacked the requisite knowledge to submit false claims associated with the billing of physician office visits for hospital blood transfusions.

For the reasons set forth below, Marshall's arguments have no merit.  The direct supervision requirements applied to Marshall because it is neither a rural nor a small hospital, and thus the Center for Medicare and Medicaid Services' ("CMS") non-enforcement instruction does not apply to it.  Moreover, Relator has adequately alleged both factually false and implied certification claims for Marshall's double-billing and impermissible use of SDVs.  She has also adequately alleged Marshall's scienter.  Defendants' motion to dismiss should be denied.

**B.    LEGAL BACKGROUND**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  In considering a motion to dismiss, a court must accept the allegations of a complaint as true and construe them in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  The court cannot test the sufficiency of the evidence underlying the allegations or resolve factual disputes about the meaning of the evidence.  *U.S. ex rel. Brown v. Celgene Corp.*, No. CV 10–3165–GHK, 2014 WL 3605896, at *6 (C.D. Cal. July 10, 2014).

The False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, was enacted as a remedial statute to combat fraud on the government. *See United States v. Neifert–White Co.*, 390 U.S. 228, 232 (1968). The statute is broadly construed to reach "all fraudulent attempts to cause the Government to pay out sums of money." *Id.* at 233.  The FCA is violated when a person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," 31 U.S.C. § 3729(a)(1)(B). To state a claim under § 3729(a)(1)(A), a relator must allege: "(1) a false or fraudulent claim (2) that was material to the decision-making process (3) which defendant presented, or caused to be presented, for payment or approval (4) with knowledge that the claim was false or fraudulent." *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047 (9th Cir. 2012).

While an "actual false claim is the *sine qua non* of an FCA violation," the false claims "contemplated by the FCA take many forms." *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and alterations omitted).  In the Ninth Circuit, a claim can also be false under an implied certification theory "when it contains no express statement regarding compliance with a statute or regulation but, by the very fact that it has been submitted, falsely implies compliance with any statutory or regulatory precondition to obtaining the requested government benefit."  *Brown*, 2014 WL 3605896, at *2; *see also Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 996-98 (9th Cir. 2010).

## II.   ARGUMENT

### A.   HERREN SHOULD BE ALLOWED TO TAKE DISCOVERY TO UNDERSTAND THE RELATIONSHIP BETWEEN MARSHALL MEDICAL CENTER AND MARSHALL FOUNDATION FOR COMMUNITY HEALTH

Defendants move to dismiss the Foundation, arguing that the SAC does not include allegations sufficient to state a claim against it.  Herren readily admits that what she knows about the Foundation and its relationship to Marshall Medical Center is limited, as she was an employee of the latter, and has no inside knowledge with respect to the relationship between the two entities.  She included the Foundation in the complaint because she has information that funds have been moved from Marshall Medical Center to the Foundation.  Nevertheless, she would need discovery to understand if this is true, if there are legitimate purposes for the transfer of funds, and what the relationship is between Marshall and the Foundation.  She therefore asks that if the Court dismisses the Foundation, it do so without prejudice, so that if discovery reveals grounds for holding the Foundation liable in this case, she will later be able to move to amend the complaint.  *See, e.g., Massung v. Cracker Barrel Old Country Store*, No. 3:13-cv-2664, 2014 WL 1379680 (N.D. Ohio Mar. 25, 2014) (dismissing without prejudice individual defendants so that if "discovery, as it proceeds against the corporate defendant, shows that grounds in fact exist for holding individual defendants liable . . . plaintiffs may seek leave—which defendants can, of course, oppose—to amend their complaint").

**B.    MARSHALL IS NOT COVERED UNDER CMS' ENFORCEMENT INSTRUCTION ON SUPERVISION REQUIREMENTS FOR OUTPATIENT THERAPEUTIC SERVICES BECAUSE DEFENDANT IS NEITHER A SMALL NOR RURAL HOSPITAL**

Marshall asserts that Relator cannot state a claim under the FCA and the California False Claims Act ("CFCA"), Cal. Gov't Code § 12650 *et seq.*, because CMS had a non-enforcement instruction in place for physician supervision of qualifying outpatient therapeutic services delivered in critical access and small rural hospitals with fewer than 100 beds. Marshall MTD at 4. Thus, according to Marshall, direct supervision of qualifying outpatient therapeutic services was not material to payment under CMS guidance. *Id.*   However, this is factually and legally false. The motion to dismiss is a hodgepodge of inapplicable law and Medicare Program regulations cobbled together *post hoc*. This is likely why Marshall's own pharmacy's audit and compliance officer (and other high-level personnel) never mentioned CMS' instruction in all the emails, memos, and guidance quoted in the SAC.[1]  Rather, reliance on the instruction appears to constitute an effort by Marshall's attorneys to render a *post hoc* justification.

Importantly, facts such as whether Defendant has 100 or more qualifying beds or is "rural" could never be ripe for a motion to dismiss pre-discovery,[2] especially in light of all the clear direction from hospital personnel that the physicians had to follow CMS' supervision requirements. But more important, as explained in Relator's Memorandum of Points & Authorities and Response in Opposition to Defendants El Dorado Hematology & Medical

---

[1] *E.g.* SAC ¶¶ 67 ("we have reconfirmed with the infusion department that they cannot start infusions unless physician is in the office"); 71 (pharmacy audit "physician must be onsite"); ¶ 74; ¶ 77 (chief compliance officer writing "RN initiating non-chemo injections. Those are not part of the extended services where hand off is possible"); ¶ 78 (compliance memo); ¶ 81 (chief compliance officer email warning "**Hospital Settles False Claims Act Case Re: Physician Supervision**") (emphasis in original); ¶ 83 (Chief Operating Officer noting her "understanding" that physicians must be available).

[2] Defendants' attempt at judicial notice aside, as a general rule, it is entirely improper for a motion to dismiss to consider facts in dispute or extrinsic material beyond the complaint as a basis for fulfilling a pleading standard. *See, e.g,. Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (stating that the Court "may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion"). In fact, Marshall's motion to dismiss is really a motion for summary judgment. *See* Fed. R. Civ. P. 12(b)(6) ( "when matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."). However, because discovery has not ensued, Relator vigorously opposes any attempt to turn this into a summary judgment motion, and believes that summary judgment would be inappropriate.

Oncology II, Inc. and Drs. Soe and Tsai's Motion to Dismiss at Section I of the Argument, which is incorporated in its entirety herein by reference, Marshall is not a small rural hospital with fewer than 100 beds, and CMS' Enforcement Instruction is inapplicable here.  Thus, Marshall's motion to dismiss must be denied.

**C.   MARSHALL WAS REQUIRED TO COMPLY WITH CMS' SUPERVISION REQUIREMENTS FOR OUTPATIENT THERAPEUTIC SERVICES DELIVERED TO MEDI-CAL BENEFICIARIES**

Marshall also argues that Medicare's supervision standards are not applicable to Medi-Cal services.  But as a provider in the Medi-Cal Program, Marshall agreed to comply with all of the terms and conditions set forth in the Medi-Cal Provider Agreements 9098 and 6208. State of California—Health and Human Services, Medi-Cal Provider Agreement, *available at*: http://files.medi-cal.ca.gov/pubsdoco/forms.asp, Relator's Request for Judicial Notice, Ex. 1. In addition to agreeing to comply with all federal laws and regulations governing and regulating Medicaid providers, *id.* at ¶ 2, Marshall  agreed to "comply with all of the requirements set forth in the Welfare and Institutions Code and its implementing regulations, *and the Medi-Cal Provider Manuals*." *Id.* at ¶¶ 23 (9098) and 25 (6208)) (emphasis added).  It also agreed to "not engage in or commit fraud or abuse . . . [which includes] practices that are inconsistent with sound medical practices and result in reimbursement by the Medi-Cal Program or other health care programs . . . for services that are unnecessary or for substandard items or services that fail to meet professionally recognized standards for health care." *Id*. at ¶¶ 14 (9098) and 16 (6208). Marshall's failure to observe the direct supervision requirements for outpatient therapeutic services provided to Medi-Cal beneficiaries violated Medi-Cal's conditions of payment and the terms of Marshall's signed Medi-Cal Provider Agreements, and thereby violated the CFCA.

Marshall asserts that, "At no point do the Medi-Cal statutes or regulations make physician supervision a condition of payment for the administration of drugs in a hospital outpatient department like Marshall's Center." Marshall MTD at 8. *This representation is entirely incorrect*. Part Two of the *Medi-Cal Provider Manual* for clinics and hospitals that provide services on an inpatient or outpatient basis states that chemotherapy intravenous services "are reimbursable only when performed by a physician or by a qualified assistant under a

physician's <u>direct</u> supervision." *Medi-Cal Provider Manual, 2-Chemotherapy: An Overview* (January 2013) *available at*: http://files.medi-cal.ca.gov/pubsdoco/publications/masters-mtp/part2/chemo anover_m01o03.doc (emphasis in original), Relator's Request for Judicial Notice, <u>Ex. 2</u>. Marshall's failure to observe the direct supervision requirements for chemotherapy services violated the CFCA.

Additionally, while Medi-Cal pays for services provided by certain "non-physician medical practitioners" ("NMPs") under the "general supervision" of a physician under certain conditions, none of the nurses or other staff present at the clinic were those types of NMPs nor has Marshall demonstrated that any of the other conditions were met for non-physician personnel to provide services in accordance with the applicable rules under the Medi-Cal Providers Manual. *See Medi-Cal Providers Manual for Non-Physician Medical Practitioners (NMP)* at 1, ("Services rendered by [NMPs] are covered by Medi-Cal. NMPs consist of Physician Assistants (PAs), Nurse Practitioners (NPs) and Certified Nurse Midwives (CNMs)"), Relator's Request for Judicial Notice, <u>Ex. 3</u>. Therefore, none of the personnel at the clinic could be supervised or billed to Medi-Cal under the general supervision requirements, *id*., and direct supervision of the clinic's personnel was required. The motion to dismiss should be denied.

## D.   RELATOR PROPERLY ALLEGES DOUBLE BILLING OF UNUSED PORTIONS OF SINGLE-DOSE VIALS

Perhaps hoping that the Court will not actually read the complaint, Defendants make a series of misrepresentations about Relator's allegations related to the use of unused portions of single-dose vials.  For example, Defendants state that "Relator does not actually allege that Marshall ever billed for wasted or discarded units of a drug."  Marshall MTD at 9.  In fact, the Second Amended Complaint states:  "Defendant Marshall . . . then billed Medicare for 40 MG of 'waste,'" SAC ¶ 108, "Defendant Marshall . . . then billed Medicare for 10MG of 'waste,'" SAC ¶ 109, "Defendant Marshall then illegally billed a second patient for 27MG of the remaining rituxan, that was already billed for patient F.S. as waste," SAC ¶ 110; *see also* SAC ¶¶ 11-113.

Thus, Herren has clearly supplied "reasonable indicia that false claims were actually submitted." *Ebeid*, 616 F.3d at 999.

Marshall also tries to portray this as a case of "rounding up," not double billing, but whether Defendants "rounded up" or billed for waste, the point is that they impermissibly billed the government *twice* for unused portions of drugs that should have been discarded and should have been billed only *once*.  CMS guidance makes clear that providers cannot bill Medicare twice for drugs taken from a single-use vial.  In February 2003, CMS explicitly stated in an *Open Door Forum Newsletter* that "[i]n no circumstances can multiple patients be billed for the entire contents of a single vial, when the patients each received a portion of the drug from the same vial."  *See Open Door Forum Newsletter, Clarification of Policy for Billing Injectable Medications* (Feb. 2003), Relator's Request for Judicial Notice, Ex. 4.  A look at the very guidance relied upon by Marshall also makes clear that when billing for SDVs, whether the unused portion is billed due to rounding up or is booked as waste, that portion *may not be reused and billed again*.  CMS' MLN Matters "News Flash" on billing for units of Rituximab and Bevacizumab has a supplemental section for all drugs and states that if the provider  "must discard the remainder of a single-use vial or other package after administering the prescribed dosage of any given drug, Medicare may cover the amount of the drug discarded along with the amount administered," provided that the vial is a single-use vial, the units billed correspond with the smallest dose vial available for purchase, and the left-over amount must actually be discarded and "may not be used for another patient regardless of whether or not that other patient has Medicare."  Marshall Req. for Jud. Notice, Ex. 9, at 3-4.  The instruction explains that providers must properly document "the actual dose administered in addition to the exact amount wasted and the total amount the vial is labeled to contain" in order to justify billing in the event of a medical review.  *Id.* at 4.

Herren alleges that Marshall billed for the full amount of each single-dose vial, and then instead of discarding the remainder, impermissibly used it on another patient and billed Medicare *again* for using that vial.  Whatever Marshall claims about Relator "misunderstanding," and

whatever its explanation with respect to whether it billed for waste or rounded up, none of its factual explanations can be considered at this time. *Brown*, 2014 WL 3605896, at *6 (noting that on a motion to dismiss, the court's "job at this stage is not . . . to resolve factual disputes about the meaning of that evidence").   At this stage, the Court must take Herren's allegations as true and construe them in the light most favorable to her, *Cousins v. Lockyer*, 568 F.3d at 1067; *Brown*, 2014 WL 3605896, at *1, and she has clearly alleged an impermissible double-billing scheme that is cognizable under the FCA.

Courts have recognized in cases with fewer specific factual allegations that billing for unused portions of SDVs is impermissible and leads to the submission of "factually false" claims to the government.  In *Foglia v. Renal Ventures Management, LLC*, 754 F.3d 153 (3d Cir. 2014), the relator made similar allegations to those here.  He alleged that the defendant had charged Medicare for the entire amount of single use vials when in fact "it harvested unused portions from vials and used this harvested amount on other patients."   754 F.3d at 157.   The Third Circuit held that "[a]ccepting the factual assertions . . . as true, we have patient logs that show that less Zemplar was used than would be required if it were used in the single use fashion.  We know that Medicare will reimburse for the full vial of Zemplar, regardless of whether all of the Zemplar is used, and that this provides an opportunity for the sort of fraud alleged by Foglia." *Id.* at 158.   The Third Circuit held these allegations to suffice to allege a "factually false" theory viable under the FCA and to give defendant notice of the charges against it.  *Id.*  Herren's allegations similarly suffice to show that Defendants impermissibly billed the government twice for unused portions of single-dose vials that should have been discarded and billed only once, and in so doing submitted factually false claims—claims that misrepresented what goods or services were provided, *see Foglia*, 754 F.3d) at 157—to the government.

**E.    RELATOR'S ALLEGATIONS WITH RESPECT TO THE POOLING AND BILLING OF UNUSED PORTIONS OF SINGLE-DOSE VIALS IMPLICATE CONDITIONS OF PAYMENT AND THEREFORE STATE A CLAIM**

Herren has also adequately alleged that Defendants engaged in conduct that led them to make impliedly false certifications for payment.  As the Ninth Circuit has explained, "[i]mplied false certification occurs when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Ebeid*, 616 F.3d at 998.  Materiality is satisfied under this theory if compliance with the rules and regulations at issue is a "*sine qua non* of receipt of" government funding.  *Id.*  Or, as Defendants put it, the threshold inquiry focuses on whether payment is conditioned on compliance with the statute or regulation.  As set forth above, Medicare has made clear that it will not pay when a provider bills it for the use of a drug from a single-dose vial for multiple patients.  As stated in the complaint, *see*  SAC ¶¶ 29-30, Medicare will only pay for the unused portions of SDVs as "waste," which necessarily precludes using remaining portions on other patients.  *Medicare Claims Processing Manual*, Chapter 17, Section 40, Discarded Drugs and Biologicals, Relator's Request for Judicial Notice, <u>Ex. 5</u>.  Clearly, then, this is a condition of payment, and Defendants' billing for unused portions of single-use vials that were already billed and should have been discarded, *see* SAC ¶¶ 108-116, contained implied certifications that were false.

These bills also were false because they violated other conditions of payment, mainly the condition that in order for a drug use to be covered the "[u]se of the drug or biological must be safe and effective and otherwise reasonable and necessary."  *See* Medicare Benefit Policy Manual, Chapter 15 – Covered Medical and Other Health Services, Section 50.4.1 – Approved use of Drug (Rev. 1, 10-01-03), Relator's Request for Judicial Notice, <u>Ex. 6</u>; *see also* 42 U.S.C. § 1395y.  The Medicare Benefit Policy manual makes clear that drugs and biologics are covered only if "they are administered according to accepted standards of medical practice."  *Id.* at § 50.4.  Defendants' use of unused portions of SDVs violates accepted standards of medical practice.  Specifically, CMS has stated that it "expects providers and suppliers to comply with nationally recognized standards for infection control practices," and "[a]mong these standard practices is the expectation that medications labeled as SDVs *must not be used for multiple*

*patients*, due to the risk of spreading infectious diseases." CMS, *Safe Use of Single Dose/Single Use Medications to Prevent Healthcare-Associated Infections* (June 15, 2012), Relator's Request for Judicial Notice, Ex. 7. Since Defendants did not administer the drugs from single-dose vials according to accepted standards of medical practice—a condition of payment—the bills they submitted to government payors were impliedly false, and violated the FCA.

In addition, the claims for leftover drug from single-use vials were false because the use was not "reasonable and necessary" since it was contraindicated by the drugs' own labels. In *U.S. ex rel. Woodard v. Davita, Inc.*, No. 1:05-CV-227, 2011 U.S. Dist. LEXIS 153430 (E.D. Tex. May 9, 2011), the court found that where a defendant had pooled and reused portions of single-dose vials, such use was not "reasonable and necessary" and therefore claims that included pooled amounts were false. The court noted that reimbursement for a drug can only be provided where its use was "reasonable and necessary." 42 U.S.C. § 1395y. It also pointed out that the Federal Drug Administration's approved uses and labeling of a drug are "considered a barometer to determine whether the drug's use is 'reasonable and necessary.'" And, according to FDA regulations, a drug use is not reimbursable if it is "contraindicated on a drug's label." *Id.* (citing 54 Fed. Reg. 37239-01). Because in *Woodard* the label for the drug at issue specifically made clear that a user should only use "one dose per vial; do not reenter the vial," the court held that "reentering . . . vials to capture and pool excess . . . for administration to patients . . . is a use contraindicated on the drug's package insert" and therefore failed to comply with Medicare's "reasonable and necessary" requirements. *Id.*

The same is true for the drugs at issue here. The SAC alleges that Defendants reused excess portions of rituxan administered to patients and billed those amounts to Medicare. *See* SAC ¶¶ 108 – 113. The label for rituxan specifically states, "Discard any unused portion left in the vial." *See* Label for Rituxan, Relator's Request for Judicial Notice, Ex. 8. Thus, under the reasoning in *Woodard*, using any unused portion left in the vial would be contraindicated on the drug's label and is per se not "reasonable and necessary." The SAC also alleges that unused portions of single-dose vials of avastin were used on patients and billed to Medicare. *See* SAC

¶¶ 114-115.  The label for avastin states, "Discard any unused portion left in a vial, as the product contains no preservatives." *See* Label for Avastin, Relator's Request for Judicial Notice, Ex. 9.  Reusing unused portions of avastin is also therefore contraindicated, is not "reasonable and necessary" and is not reimbursable.  In sum, in reusing and billing unused portions of single-dose vials, Defendants violated specific conditions of payment.  The claims they made for those uses were therefore impliedly false and violated the FCA.

## F.   HERREN ALSO ADEQUATELY STATES A CLAIM FOR WORTHLESS SERVICES

Defendants also defrauded the government by providing worthless services.  The SAC alleges that Defendants gave drugs to patients that were expired, *see* SAC ¶¶ 53(d), 60, and because they had been used on multiple patients and then mixed, were adulterated and contaminated, *see* SAC ¶¶ 114-116. The Ninth Circuit has stated that "[i]n an appropriate case, knowingly billing for worthless services or recklessly doing so with deliberate ignorance may be actionable under § 3729, regardless of any false certification."  *U.S. ex rel. Lee v. Smithkline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir. 2001); *see also United States v. Aerodex*, 469 F.2d 1003, 1007-08 (5th Cir. 1972).  Providing expired and adulterated chemotherapy drugs to cancer patients surely constitutes "worthless services"—services the government would not have paid for had it known that the drugs were expired and/or contaminated.  As such, Herren has stated a claim under the FCA arising from Defendants' billing for the impermissible use of expired and contaminated drugs from SDVs.

## G.   THE SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES MARSHALL'S KNOWLEDGE WITH RESPECT TO THE SDVs

Marshall also argues that the SAC does not allege the requisite knowledge with respect to the SDV claims prior to Marshall's audit.  These arguments have no merit.  Marshall does not have to have actual knowledge about the SDV issue in order to be liable under the FCA.  The FCA defines knowingly to mean having actual knowledge, acting in "deliberate ignorance of the

truth or falsity of the information," or acting in "reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A)(i)-(iii). The term "knowingly" does not require any proof of specific intent to defraud. *Id.* at § 3729(b)(1)(B). The SAC alleges that Marshall bills government healthcare programs, including for services provided at the Hematology/Oncology Center. SAC ¶ 10. As the entity that billed for the impermissible multiple use of SDVs, Marshall had a duty to ensure compliance with all Medicare regulations. Its failure to ensure proper use and billing for SDVs prior to the pharmacy audit in September 2011 (some four years after contracting with Drs. Soe and Tsai to run the clinic) does not let it off the hook. Indeed, taking Herren's allegations as true, it is clear that prior to the audit, Marshall was acting with reckless disregard or deliberate indifference. After that time, it had actual knowledge.

Moreover, the SAC is clear that Marshall contracts with the Hematology/Oncology Center, it directly employs nurses at the Hematology/Oncology clinic, and Marshall's employees, including Herren, supervised those nurses. SAC ¶¶ 10, 12, 13. A corporation will be held liable for violations of the FCA if its employees "were acting within the scope of their authority for the purpose of benefitting the corporation" when they committed the acts that are alleged to violate the FCA. *United States v. Hangar One, Inc.*, 563 F.2d 1155, 1158 (5th Cir. 1977); *Grand Union Co. v. United States*, 696 F.2d 888, 891 (11th Cir. 1983) ("We have held in cases brought under the False Claims Act that the knowledge of an employee is imputed to the corporation when the employee acts for the benefit of the corporation and within the scope of his employment."). Clearly, here the nurses who used leftover portions of single-dose vials and the billing personnel who impermissibly billed for that use were employees of Marshall acting within the scope of their authority and benefitting the entity. As such, their knowledge is imputed to Marshall. For all of these reasons, Defendants' motion to dismiss ought to be denied.

**H. THE SECOND AMENDED COMPLAINT SUFFICIENTLY ALLEGES THAT MARSHALL HAD THE REQUISITE KNOWLEDGE TO SUBMIT FALSE CLAIMS IN CONNECTION WITH PHYSICIAN OFFICE VISITS FOR HOSPITAL TRANSFUSIONS**

Marshall also claims that the SAC does not sufficiently allege that it had knowledge with respect to the billings for physician office visits for hospital transfusions.   But Marshall's arguments skew the facts and are meritless. Marshall's assertion that it had no way of knowing that there were improper billings related to blood transfusion services prior to the November 28, 2011 management meeting is false. Marshall's MTD at 14.   As has already been stated, a person "knowingly" submits a false claim not only when he or she "has actual knowledge of the information," but also when he or she "acts in deliberate ignorance" or "reckless disregard" of the truth or falsity of the information. *Lee,* 245 F.3d at 1053.   Scienter need not be alleged with the specificity required by Rule 9(b); in order to allege scienter, the facts must plausibly show that defendant had actual knowledge, acted in deliberate ignorance or with reckless disregard. *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011).

At this stage in the litigation, Relator's allegations must be given more deference than Marshall's explanation of those allegations. "If there are two alternative explanations [of the facts alleged], one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012).  Indeed, the Court's job at this stage "is not to test the sufficiency of the evidence underlying [Plaintiff's] allegations or to resolve factual disputes about the meaning of that evidence." *Brown*, 2014 WL 3605896, at *6 (internal citations omitted).   So long as the plaintiff alleges facts plausibly suggesting a violation of the FCA, the court must accept those allegations as true.  *See id.*

Herren has plausibly alleged facts to show Marshall's knowledge of improper billings. As a facility billing Medicare, Marshall is charged with ensuring that the billings submitted by the hospital are accurate and conform to the rules and regulations. As the SAC alleges, Marshall raised concerns of improper billings at an internal management meeting held on November 28, 2011, led by Melanie Hadsell, the Director of Physician Clinic Billing. SAC ¶ 99. As her title suggests, she is responsible for overseeing the claims submitted by physicians practicing for Marshall, so to say that Marshall had no knowledge of these facts prior to November 28, 2011 is

utterly untrue. During the internal management meeting, Ms. Hadsell informed attendees of her findings (findings determined prior to November 28, 2011) of improper and frequent use of CPT billing code 99214 and 99215.  SAC ¶ 101. Instead of taking action to remedy the illegal billing, Marshall relayed this obligation to Defendants Soe and Tsai. *Id.* In response, Soe and Tsai objected to self-reporting and refunding the money, and moreover, the doctors indicated that they would continue using CT codes 99214 and 99215.  *Id.*

Marshall is responsible for the conduct of its employees and the actions and knowledge of its employees can be imputed to it.  *See, e.g., United States v. Hughes*, 585 F.2d 284, 287 (7th Cir. 1984); *Grand Union Co.* 696 F.2d at 891;  *Hangar One,* 563 F.2d at 1158; *United States v. Ridglea State Bank*, 357 F.2d 495, 500 (5th Cir. 1966).  Marshall had an employee overseeing physician billing and had been working with Drs. Soe and Tsai for almost a decade before the November 28, 2011 meeting.  Just because Marshall sought to rectify the problem in November 2011 does not mean it was not aware of, or should not have been aware of, it before.  The facts in the SAC plausibly allege that in this regard, Marshall acted recklessly or at least with deliberate ignorance.  Thus, the motion to dismiss should be denied.

### III.   CONCLUSION

For the reasons set forth above, the motion to dismiss brought by Defendants Marshall Medical Center and Marshall Foundation for Community Health should be denied.  Should the Court be inclined to grant the motion with respect to the Foundation, Relator respectfully requests that it be without prejudice.  Moreover, to the extent that the Court finds the SAC deficient, Relator respectfully requests leave to amend to correct any such deficiency, as there has been no "undue delay, bad faith or dilatory motive" on her part and there will be no undue prejudice to Defendants by allowing the amendment.  *See U.S. ex rel. Solis v. Millennium Pharm., Inc.*, No. No. 2:09–cv–03010–MCE–EFB, 2014 WL 1270581, at *4 (E.D. Cal. March 26, 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003)).

March 11, 2015                          Respectfully submitted,


                                        */s/ Loren Jacobson*
                                        **WATERS KRAUS & PAUL**
                                        MICHAEL L. ARMITAGE (No. 152740)
                                        LOUISA O. KIRAKOSIAN (No. 271983)
                                        222 N. Sepulveda Blvd.
                                        Suite 1900
                                        El Segundo, California 90245
                                        Tel. 310-414-8146
                                        Fax. 310-414-8156

                                        **WATERS & KRAUS LLP**
                                        LOREN JACOBSON (*pro hac vice*)
                                        3219 McKinney Ave.
                                        Dallas, TX 75204
                                        Tel. 214-357-6244
                                        Fax. 214-357-7252

                                        **JOSEPH, GREENWALD & LAAKE, P.A.**
                                        BRIAN J. MARKOVITZ, *pro hac vice*
                                        MATTHEW M. BRYANT, *pro hac vice*
                                        6404 Ivy Lane, Suite 400
                                        Greenbelt, MD 20770
                                        Tel. (301) 220-22200
                                        Fax. (301) 220-1214

                                        ***ATTORNEYS FOR RELATOR HERREN***

Relator's Opposition to Motion to Dismiss of Defendant Marshall Medical Center, et. al.

## <u>CERTIFICATE OF SERVICE</u>

On March 11, 2015, the foregoing document was served electronically with the clerk of court for the U.S. District Court, Eastern District of California, using the electronic case filing system of the court.  I hereby certify that counsel of record in this action have each been served with the foregoing document electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


*/s/ Loren Jacobson*               
Loren Jacobson

Relator's Opposition to Motion to Dismiss of Defendant Marshall Medical Center, et. al.