**WATERS KRAUS & PAUL**
MICHAEL L. ARMITAGE (No. 152740)
LOUISA O. KIRAKOSIAN (No. 271983)
222 N. Sepulveda Blvd.
Suite 1900
El Segundo, California 90245
Tel. 310-414-8146
Fax. 310-414-8156

**WATERS & KRAUS, LLP**
LOREN JACOBSON *pro hac vice*
3219 McKinney Ave.
Dallas, Texas 75204
Tel. 214-357-6244
Fax. 214-871-2263

**JOSEPH, GREENWALD & LAAKE, P.A.**
Brian J Markovitz, *pro hac vice*
Matthew E. Kreiser, *pro hac vice*
6404 Ivy Lane, Suite 400
Greenbelt, MD  20770
(301) 220-2200
(301) 220-1214 (facsimile)

*Attorneys for Relator Herren*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, AND THE STATE OF CALIFORNIA ex rel. COLLEEN HERREN,<br><br>Plaintiffs,<br><br>vs.<br><br>MARSHALL MEDICAL CENTER; EL DORADO HEMATOLOGY & MEDICAL ONCOLOGY II, INC.; DR. LIN H. SOE; DR. TSUONG TSAI,<br><br>Defendants. | CASE NO.  2:12-CV-0098 JAM-KJN<br><br>**RELATOR'S RESPONSE TO DEFENDANT MARSHALL MEDICAL CENTER'S OPPOSITION TO RELATOR'S MOTION FOR LEAVE TO AMEND** |

//

//

//

1
**RELATOR'S RESPONSE TO DEFENDANT MARSHALL MEDICAL CENTER'S OPPOSITION TO RELATOR'S MOTION FOR LEAVE TO AMEND**

## I. Introduction

In Response to Relator's Motion for Leave to Amend, Defendant, MARSHALL MEDICAL CENTER, ("Marshall"), postures to the Court that Relator's Motion fails to meet Fed. R. Civ. P. 16(b)'s "good cause" standard, and is, furthermore, futile and prejudicial to Marshall pursuant to Fed. R. Civ. P. 15(a). However, Marshall's arguments mischaracterize the procedural posture of this matter and contradict previous positions taken (and representations made) by Marshall relating to Relator's knowledge of Marshall's billing practices. Marshall also mischaracterizes Relator's amendments to her complaint as being new "claims" and "theories," as if it is surprised to the point of prejudice that it was unaware that medical documentation would be used in this Medicare fraud case. And possibly most troublingly, Marshall argues that it is beyond the reach of any regulatory body or agency empowered by CMS to enforce compliance with the rules and regulations governing reimbursement for services provided to patients in the federal healthcare programs.[1] In order for the Court to deny Relator's Motion for Leave to Amend based upon Marshall's arguments, the Court would need to find that federal healthcare program participants, like Marshall, are (1) not required to adhere to nor follow the billing requirements issued by fiscal intermediaries empowered by CMS to administer and enforce conditions for reimbursement of services; and (2) not required to properly document the provision(s) of care provided to patients in medical records. As explained below, Marshall's arguments are meritless, run contrary to the law and also the policy of the United States, and are unworthy of credence. Accordingly, Relator's Motion for Leave to Amend should be granted.

//
//
//

---

[1] Relator hereby incorporates her Response to Defendants El Dorado Hematology & Medical Oncology II, Inc. and Drs. Lin Soe and Tsuong Tsai's Opposition, which explains why sufficient prejudice if any is not present here.

-1-

## II.      Argument

### A.   Relator Has Been Diligent In Her Efforts To Comply With the Timeframes Established By The Court And Meets FRCP 16(b)'s "Good Cause" Standard To Modify the Scheduling Order And Permit Amendment of Her Complaint

Marshall argues that Relator fails to meet Fed. R. Civ. P. 16(b)'s "good cause" requirement because she has been "extraordinarily delinquent" with her proposed amendment of her Second Amended Complaint, ("SAC"), failing to exercise due diligence under the Rule. *See* Def. Marshall's Opp. to Mot. for Leave to Amend at 7, ECF No. 98.  In response to Marshall's efforts to create a strained argument of "untimeliness" under Fed. R. Civ. P. 16(b), Marshall states that this matter has been in litigation for over four (4) years and Relator had previous notice and knowledge of Marshall's billing and medical records documentation "given [Relator's] supervisory position at Marshall." *See id.* at 2–3.

First, Marshall completely misrepresents the procedural posture of this case by arguing that Relator has failed to exercise due diligence within the timeframes set by this Court.  Marshall completely dismisses and ignores the fact that Relator's action remained under seal for over two-and-one-half years (2.5) and discovery commenced after June 5, 2015.  Accordingly, discovery has *only* been conducted in this complex, medical *qui tam* matter for a little over eleven (11) months, not the 4 year time period Marshall indicates.  And Marshall is still producing documents, most important of which are its patients' records and fee tickets, to Relator for review, which occurred most recently on April 28, 2016.  This argument is simply misleading and temporally incorrect.

Second, because it now suits its purposes, Marshall greatly oversells Relator as a billing expert who possessed intimate knowledge of CMS' billing and medical records documentation requirements and its own internal billing processes.  But Marshall's new position completely contradicts its previous contentions of Relator's knowledge, or what it had asserted to this Court was a complete lack thereof, as stated in its Motion to Dismiss.  *Compare* Marshall Mot. to Dismiss, ECF No. 54-1 at 1 ("[Relator's] allegations, however, demonstrate a fundamental misunderstanding of [] CMS' billing rules"); *Id.* at 10 n. 7 ("It appears that the billing rules for

rituxan are a source of confusion for Relator"); *with* ECF No. 98 at 1 ("And there can be no suggestion that Herren was unaware of Marshall's billing and medical records documentation given her supervisory position at Marshall in 2010 and 2011"). So, Marshall argued in its Motion to Dismiss that Relator was unknowledgeable about billing requirements and medical documentation to seek dismissal of her action. Now, Marshall turns right back around to prevent Relator from amending the SAC and argues that Relator is a billing expert who has been on notice since the commencement of her suit, and, therefore, has been delinquent in seeking leave to amend. Relator did not work in Marshall's billing department, and Relator could not have possibly been placed on notice, as Marshall asserts, of all its transgressions over a multi-year period from her review of six (6) patient records that were in her possession following her termination. *See* ECF No. 98 at 6; ECF No. 54-1 at 1. This line of argument is absurd. The allegations contained in Relator's Third Amended Complaint, ("TAC"), concerning Marshall's failure to account for the presence of Defendant physicians Drs. Soe and Tsai via proper documentation of their whereabouts, in violation of CMS' "direct physician supervision" requirements, was *only* learned during discovery, which occurred after the Scheduling Order's *pre-discovery* deadline to amend pleadings on June 25, 2015; thus, Relator has stated good cause under 16(b) because she could not have possibly have presented such allegations by the pre-discovery deadline.

**B.      Relator's Allegations Contained In The TAC Are Not "New Claims" Nor A "New Theory of Liability"**

Marshall misconstrues the additional allegations contained in Relator's TAC. Relator is not asserting new claims nor ascribing a new theory of liability against Marshall. The purpose of the TAC is to expand and clarify the time period of infractions alleged in the SAC that Marshall's fraudulent scheme of billing for procedures requiring "direct physician supervision" when Defendant physicians Drs. Soe and Tsai were not present continued unabated long after Relator's termination from employment. Nothing in the TAC changes Relator's claim or

-3-

theory that Marshall failed to meet CMS' requirements for procedures requiring "direct physician supervision." Relator's allegations in the TAC simply provide additional facts to prove that Marshall's violations of the direct supervision requirements continued well after Relator left Marshall through the use of medical documents, the use of which can come as no surprise to Marshall in this medical *qui tam*.[2] And to be clear, the medical records, as demonstrated in the prior versions of Relator's complaint are hardly the only evidence available as there is also witness testimony and other internal documents showing that the physicians were not present. So, it is simply a red herring put forth by Marshall to argue that this case has become one of improper medical documentation. Relator's Motion should be granted.

### C. Amendment Of Pleadings In FCA Actions To Assert Allegations Learned Via Discovery Is Permissible And Routine

In FCA actions, ***the amendment of pleadings to incorporate additional details relating to a defendant's fraudulent scheme to defraud the Government is routine***. *See U.S. ex rel. Underwood v. Genentech, Inc.*, 720 F. Supp. 2d 671, 680–81 (E.D. Pa. 2010) (noting that "amendments based on evidence learned during discovery are permissible and commonly allowed" and that "[defendant] thus asks me to disallow *qui tam* amendments purportedly based on documents that Relator obtained from the DOJ because those documents may have been provided to the DOJ by [defendant]. Once again, [defendant]'s request has no legal

---

[2] Marshall's arguments place Relator in a "catch 22" because Marshall attempts to (1) stop the applicable time period at or near the end of Relator's employment while (2) precluding an expansion of that time period by prohibiting Relator's use of documentation to support her allegations that Marshall's fraudulent scheme continued well after Relator's employment ended. Upholding such arguments will, in practical effect, encourage potential defendants to terminate whistleblowers so that defendants can tie potential FCA liability to a relator's term of employment without fear of expansion of that time period beyond the relator's termination through relator's use of documentary evidence. Such a holding would run contrary to the public policy of the FCA's anti-retaliation provision. *See U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996) ("Congress added 31 U.S.C. § 3730(h) to the FCA in 1986 to protect 'whistleblowers,' those who come forward with evidence their employer is defrauding the government, from retaliation by their employer"); *accord U.S. ex rel. Daugherty v. Bostwick Laboratories*, 2012 WL 6593804, at *12 (S.D. Ohio Dec. 18, 2012) ("Given Relator's outsider status, the full panoply of claims submitted to the government by [defendant] for payment *is only available* through discovery") (emphasis added).

support") (internal citation omitted); *accord Remmes v. International Flavors & Fragrances, Inc.*, 453 F. Supp. 2d 1058, 1071 (N.D. Iowa 2006) (in fraud case noting that "defendants have not directed the court to any legal authorities which would support such a limitation [of not allowing a complaint to be amended based upon information obtained through discovery], nor has the court's own research disclosed any such authority"). Allowing an amendment based upon discovery, like here, is sufficient good cause. *See e.g. Orozco v. Midland Credit Management Inc.*, 2013 WL 3941318 at *4-5 (E.D. Cal. July 30, 2013) (plaintiff was diligent and good cause found to even add new claims and support existing ones as "plaintiff's reasons for seeking amendment are compelling" because "[u]ntil defendant submitted its amended discovery responses" the information was only in defendant's possession). Relator's Motion should be granted.

### D. Marshall Is Required To Comply With The Documentation Requirements Espoused By CMS And Its Fiscal Intermediaries

Possibly the most troubling aspect of Marshall's Opposition is Marshall's belief that it does not have to document within its patients' medical records whether it complied with CMS' direct physician supervision requirements, as applicable, to substantiate its requests for payment to the Government. The Government's requirement that hospital's like Marshall maintain proper medical documentation to justify billing is nothing new. *See* Centers for Medicare and Medicaid Services, *1995 Documentation Guidelines for Evaluation and Management Services*, available at: https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNEdWeb Guide/Downloads/95Docguidelines .pdf at 2 ("The CPT and ICD-9-CM codes reported on the health insurance claim form or billing statement should be supported by the documentation in the medical record"); Centers for Medicare and Medicaid Services, *Avoiding Medicare Fraud and Abuse: A Roadmap for Physicians*, March 2012, available at:https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProductsDownloads/Avoiding_Medicare_ and A_Physicians_FactSheet_

905645.pdf at 5 (stating in colloquial terms, with respect to a physician's requirement to properly document services to Medicare patients for billing, "If you didn't document it, it's the same as if you didn't do it")); *United States v. Bourseau*, 2006 WL 2961105 at *10 (S.D. Cal. Sept. 29, 2006) (explaining that "legal obligations of participating providers [includes] . . . know[ing] the information contained in HHS-CMS and fiscal intermediary notices, including manual issuances, bulletins, and other written guides and directives") (quoting 42 C.F.R. § 411.406), *aff'd*, 531 F.3d 1159 (9th Cir. 2008), *cert. denied* 555 U.S. 1212 (2009). Marshall's argument has no legal support and runs contra to common sense and the well-established government policies that a federal healthcare program participant has to be able to substantiate the services it provides in support of its request for payment. Otherwise the Government would never be able to verify whether a participant, like Marshall, provided the requisite level of supervision or any other services.

### III.  Conclusion

For the foregoing reasons and those stated in Relator's original motion and her Response to Defendants El Dorado Hematology & Medical Oncology II, Inc. and Drs. Lin Soe and Tsuong Tsai's Opposition (which are incorporated herein), Relator respectfully requests that the Court grant its Motion for Leave to Amend to amend.

Respectfully submitted,

_____

**WATERS KRAUS & PAUL**
MICHAEL L. ARMITAGE (No. 152740)
LOUISA O. KIRAKOSIAN (No. 271983)

**JOSEPH, GREENWALD & LAAKE, P.A.**
BRIAN J. MARKOVITZ, *pro hac vice*
MATTHEW E. KREISER, *pro hac vice*

***ATTORNEYS FOR RELATOR HERREN***